UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

ARTHUR NELSON                           :
                                        :                    PRISONER
        v.                              :        Case No. 3:05cv273 (SRU)(WIG)
                                        :
THERESA LANTZ, et al.[1]                :


RULING ON DEFENDANTS' MOTIONS TO DISMISS

Arthur Nelson brought this civil rights action pro se pursuant to 28 U.S.C. § 1915.

Nelson alleges that defendants were deliberately indifferent to his need for medical treatment.

Defendants have filed motions to dismiss directed to the original and amended complaints. For

the reasons that follow, the motion to dismiss the original complaint is denied as moot and the

motion to dismiss the amended complaint is granted.

I.      Standard of Review

        When considering a Rule 12(b) motion to dismiss, the court accepts as true all factual

allegations in the complaint and draws inferences from these allegations in the light most

favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Flores v. Southern

Peru Copper Corp., 343 F.3d 140, 143 (2d Cir. 2003). Dismissal is inappropriate unless it

appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would

entitle him to relief. See Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 654 (1999); Sweet

v. Sheahan, 235 F.3d 80, 83 (2d Cir. 2000). "'[T]he issue is not whether a plaintiff will

---

[1] The named defendants in the amended complaint are Theresa Lantz, James Dzurenda, Correctional Officer Caruther, incorrectly identified as Caruthers, and the University of Connecticut ("UCONN") Medical Center.

ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'"

York v. Association of Bar of City of New York, 286 F.3d 122, 125 (2d Cir.) (quoting Scheuer,

416 U.S. at 236), cert. denied, 537 U.S. 1089 (2002).  In other words, "'the office of a motion to

dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the

evidence which might be offered in support thereof.'"  Eternity Global Master Fund Ltd. v.

Morgan Guar. Trust Co. of New York, 375 F.3d 168, 176 (2d Cir. 2004) (quoting Geisler v.

Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)).  However, "[c]onclusory allegations or legal

conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss"

from being granted.  Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002)

(internal quotation marks and citation omitted).

II.    Facts

       For the purposes of deciding this motion, the court assumes that the following allegations

contained in the amended complaint are true.

       Prior to the incidents giving rise to this action, Nelson underwent two surgical procedures

to remove a cancerous tumor from his left jaw.  The first surgery was performed in 1998 as an

emergency procedure.  Bone from Nelson's hip was grafted to his jaw.

       At approximately 6:00 p.m., on August 9, 2004,  Nelson asked defendant Caruther to

contact the medical staff so someone could make a notation that his mouth was bleeding from an

incision made during a biopsy.  Defendant Caruther told Nelson that he would contact the

medical staff.  Approximately two hours later, Nelson had another inmate repeat the inquiry.  The

correctional officer, presumably defendant Caruther, told the inmate that Nelson would have to

wait until the medication distribution time.  Medical staff came to the housing unit to distribute medication at approximately 9:30 p.m.  Nelson banged on his cell door to get the attention of the correctional staff and have his cell opened so the medic could check his mouth.  Defendant Caruther did not acknowledge that Nelson needed to be seen by medical staff and another correctional officer told Nelson to stop banging on his door.  The bleeding stopped the following day.

Nelson sent numerous requests to dental staff inquiring when he was scheduled for x-rays and surgery to remove the benign tumor or cyst from his left jawbone.  On September 16 and 17, 2004, Nelson was taken to UCONN Medical Center, but did not receive x-rays on either day.  While waiting for surgery, Nelson experienced constant pain and his gums bled at night, staining his bed linen.  The surgery was performed several months later.

In the beginning of December 2004, Nelson complained to the medical staff that he was not feeling well.  Approximately one week later, on December 8, 2004, Nelson was taken to UCONN Medical Center for a check-up.  Nelson was admitted to the hospital when the examination revealed an infection at the previous cancer site.  On December 16, 2004, Nelson was discharged from the UCONN Medical Center and taken to the hospital unit at Osborn Correctional Institution.  On December 27, 2004, Nelson was discharged from the hospital unit to general population.  Nelson informed custody staff that he had been confined in protective custody at Cheshire Correctional Institution.  After 6½ hours, Nelson was removed from general population and placed in a restrictive housing unit where he remained until December 30, 2004.

In April 2005, Nelson learned that the scar on his neck or lower jawbone and the swelling

of scar tissue on the left side of his face will remain and that the left area of his bottom lip, chin

and jaw will be permanently numb as a result of nerve damage.

III.    Discussion

In response to defendants' first motion to dismiss, Nelson filed an amended complaint.

Once an amended complaint is filed, the original complaint has no legal effect.  See International

Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir. 1977) (holding that amended complaint

supersedes original complaint and renders former complaint of no legal effect), cert. denied, 434

U.S. 1014 (1978).  Because the original complaint no longer is operative, defendants' motion to

dismiss the original complaint is denied as moot.

In the amended complaint, Nelson alleges that defendants were deliberately indifferent to

his medical needs because they denied him care for a benign tumor in his mouth and did not

respond promptly to his request for treatment.  Defendants move to dismiss the amended

complaint on six grounds:  (1) Nelson fails to state a claim for deliberate indifference to a serious

medical need, (2) the claims in the amended complaint are barred by res juducata, (3) Nelson's

claims against UCONN Medical Center and the remaining defendants in their official capacities

are barred by the Eleventh Amendment, (4) Nelson's negligence claims are barred by

Connecticut General Statutes § 4-165, (5) Nelson fails to allege the personal involvement of

defendants Lantz and Dzurenda in any constitutional violation and (6) defendants are protected

by qualified immunity.  In opposition, Nelson states that he has a right to seek damages and

believes that defendants Lantz and Dzurenda are responsible for the actions of defendant

Caruther.

4

A.      Claims Against Defendant UCONN Medical Center

Nelson has included the UCONN Medical Center as a defendant.  To state a claim under

42 U.S.C. § 1983, Nelson must satisfy a two-part test.  First, he must allege facts demonstrating

that the defendant acted under color of state law.  Second, he must allege facts demonstrating

that, as a result of defendant's actions, he has been deprived of a constitutionally or federally

protected right.  See Lugar v. Edmondson Oil Co., 457 U.S. 922, 930 (1982); Washington v.

James, 782 F.2d 1134, 1138 (2d Cir. 1986).

It is well-settled that a state agency is not a "person" within the meaning of section 1983.

See, e.g., Spencer v. Doe, 139 F.3d 107, 111 (2d Cir. 1998).  UCONN Health Center is a state

agency.  Thus, it is not a person within the meaning of section 1983.  Defendants' motion to

dismiss is granted with respect to all claims against defendant UCONN Medical Center.

B.      Official Capacity Claims for Monetary Damages

Nelson seeks damages from defendants Lantz, Dzurenda and Caruther in their individual

and official capacities.  Generally, a suit for recovery of money may not be maintained against

the state itself, or against any agency or department of the state, unless the state has waived its

sovereign immunity under the Eleventh Amendment.  See Florida Dep't of State v. Treasure

Salvors, 458 U.S. 670, 684 (1982).  Section 1983 does not override a state's Eleventh

Amendment immunity.  See Quern v. Jordan, 440 U.S. 332, 342 (1979).

The Eleventh Amendment immunity that protects the state from suits for monetary relief

also protects state officials sued for damages in their official capacities.  See Kentucky v.

Graham, 473 U.S. 159 (1985).  A suit against a defendant in his official capacity is ultimately a

suit against the state if any recovery would be expended from the public treasury.  See Pennhurst
State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 n.11 (1984).

Nelson does not specify in his amended complaint whether he seeks damages from
defendants Lantz, Dzurenda and Caruther in their individual or official capacities.  Any claim for
damages against these defendants in their official capacities, however, is barred by the Eleventh
Amendment.  Defendants' motion to dismiss is granted with respect to any official capacity
claims for damages.

C.    Claim Against Defendant Caruther

Nelson alleges that defendant Caruther was deliberately indifferent to his medical needs
because he did not respond properly to his request for treatment.  Specifically, he alleges that
defendant Caruther did not permit him to see the medic on August 9, 2004.

Deliberate indifference by prison officials to a prisoner's serious medical need constitutes
cruel and unusual punishment in violation of the Eighth Amendment.  See Estelle v. Gamble,
429 U.S. 97, 104 (1976).  To prevail on such a claim, the plaintiff must allege "acts or omissions
sufficiently harmful to evidence deliberate indifference" to his serious medical need.  Id. at 106.
He must show intent to either deny or unreasonably delay access to needed medical care or the
wanton infliction of unnecessary pain by prison personnel.  See id. at 104-05.

Mere negligence will not support a section 1983 claim[2]; "the Eighth Amendment is not a

_____

[2] Additionally, to the extent Nelson argues that Caruther is liable on a state law
negligence claim, his claim is barred by Connecticut General Statutes § 4-165.  That section
provides that "[n]o state officer or employee shall be personally liable for damage or injury, not
wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of
his or her employment."

6

vehicle for bringing medical malpractice claims, nor a substitute for state tort law." Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003). Thus, "not every lapse in prison medical care will rise to the level of a constitutional violation," id.; rather, the conduct complained of must "shock the conscience" or constitute a "barbarous act." McCloud v. Delaney, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (citing United States ex rel. Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970)); see also Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); Tomarkin v. Ward, 534 F. Supp. 1224, 1230 (S.D.N.Y. 1982) (holding that treating physician is liable under the Eighth Amendment only if his conduct is "repugnant to the conscience of mankind.").

Inmates do not have a constitutional right to the treatment of their choice. See Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986). Thus, mere disagreement with prison officials about what constitutes appropriate care does not state a claim cognizable under the Eighth Amendment. See Ross v. Kelly, 784 F. Supp. 35, 44 (W.D.N.Y.), aff'd, 970 F.2d 896 (2d Cir.), cert. denied, 506 U.S. 1040 (1992).

There are both subjective and objective components to the deliberate indifference standard. See Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom. Foote v. Hathaway, 513 U.S. 1154 (1995). The alleged deprivation must be "sufficiently serious" in objective terms. Wilson v. Seiter, 501 U.S. 294, 298 (1991). See also Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting) ("'serious medical need' requirement contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain"). The

Second Circuit has identified several factors that are highly relevant to the inquiry into the seriousness of a medical condition: "'[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" <u>Chance v. Armstrong</u>, 143 F.3d 698, 702 (2d Cir. 1998) (citation omitted).

In addition to demonstrating a serious medical need to satisfy the objective component of the deliberate indifference standard, the plaintiff also must present evidence that, subjectively, the charged prison official acted with "a sufficiently culpable state of mind." <u>Hathaway</u>, 37 F.3d at 66. "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" <u>Id.</u> (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994)).

The claim against defendant Caruther concerns an incident on the evening of August 9, 2004. Prior to the incident, Nelson had undergone a biopsy on the benign tumor or cyst. At 6:00 p.m., Nelson alleges that he asked defendant Caruther to call the medical department so staff could make a notation that the incision was bleeding and that defendant Caruther said he would do so. Nelson does not allege that he asked for any medical treatment. About two hours later, Nelson alleges that another inmate inquired for him and was told by defendant Caruther that Nelson would have to wait until medical staff came to the unit to distribute medications. Nelson does not indicate the nature of the inquiry by the other inmate. When the medic came to the

8

housing unit to distribute medications, defendant Caruther did not acknowledge that Nelson

needed to be seen by the medic.  Nelson states that the bleeding stopped the following day.

Construing those allegations in the light most favorable to Nelson, the court concludes

that Nelson has not alleged facts showing that he suffered from a serious medical need on August

9, 2004.  Although Nelson did suffer from a serious condition that required three surgeries, that

condition is not the subject of his claim against defendant Caruther.  The claim concerns bleeding

for a number of hours from a biopsy incision in Nelson's mouth.  Nelson does not allege that he

suffered any pain on that day.  The bleeding stopped on its own the following day.  Thus, the

bleeding from the biopsy incision on the evening of August 9, 2004, did not constitute a serious

medical need.

Further, even assuming that Nelson asked defendant Caruther for medical assistance

when the medic was in the housing unit, Nelson fails to allege facts satisfying the subjective

component of the test for deliberate indifference.  Although the court does not condone defendant

Caruther's failure to request that the medic check Nelson, the failure to request medical care

under the circumstances and on that one occasion does not shock the conscience.   Defendants'

motion to dismiss is granted with respect to the claim against defendant Caruther.

D.    Claims Against Defendants Lantz and Dzurenda

In addition to the claim against Caruther, Nelson alleges that:  his third surgery was

delayed; he suffered constant pain and bleeding gums while he was waiting for the surgery; the

dental staff did not respond to his inquiries; the medical staff did not respond to his medical

complaints in early December 2004; swelling and scar tissue will not diminish over time; nerve

damage has caused loss of feeling in the lower left portion of his face; and he was housed in general population at Osborn Correctional Institution for 6½ hours and in restrictive housing for three days.  He does not, however, name as defendants any member of the dental staff at Cheshire Correctional Institution, any correctional staff members from Osborn Correctional Institution or any medical persons employed within the Department of Correction or at the UCONN Medical Center.  The only other named defendants are Commissioner Lantz and Warden Dzurenda.

Although Lantz and Dzurenda are named in the case caption, Nelson does not reference either of them in the body of his complaint.  In opposition to the motion to dismiss, Nelson states that defendants Lantz and Dzurenda are responsible for the actions of defendant Caruther. Although Nelson does not reference the other claims, the court assumes that he contends that Lantz and Dzurenda are responsible for his other claims as well.

It is settled law in this circuit that in a civil rights action for monetary damages against a defendant in his individual capacity, a plaintiff must demonstrate the defendant's direct or personal involvement in the actions that are alleged to have caused the constitutional deprivation. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).

Defendants Lantz and Dzurenda are supervisory officials.  "A supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort." Leonard v. Poe, 282 F.3d 123, 140 (2d Cir. 2002).  Section 1983 imposes liability only on the official causing the violation.  Thus, the doctrine of respondeat superior is inapplicable in section 1983 cases.  See Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999).

10

> [A] supervisor may be found liable for his deliberate indifference
> to the rights of others by his failure to act on information indicating
> unconstitutional acts were occurring or for his gross negligence in
> failing to supervise his subordinates who commit such wrongful
> acts, provided that the plaintiff can show an affirmative causal link
> between the supervisor's inaction and [his] injury.

Leonard, 282 F.3d at 140.

Nelson has alleged no facts in his original complaint or his amended complaint suggesting that defendants Lantz and Dzurenda even were aware of his medical needs. He does not allege that he informed either defendant of his medical needs or that he contacted them when he encountered difficulties with the medical and dental staff. He does not allege any facts suggesting that Lantz was aware of his improper housing assignment. Nelson merely claims that they are responsible. As stated above, respondeat superior claims are not cognizable under section 1983.

Because Nelson has alleged no facts demonstrating the personal involvement of Lantz and Dzurenda, defendants' motion to dismiss is granted with respect to all remaining claims for damages against these defendants in their individual capacities.

E.     Request for Declaratory and Injunctive Relief

Nelson also states that he seeks unspecified declaratory and injunctive relief. The court can discern no declaratory or injunctive relief that would be warranted in this case. Nelson has undergone the third surgical procedure and his housing assignment has been corrected.

These requests for declaratory and injunctive relief are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) as lacking an arguable legal and factual basis.

11

IV.   <u>Conclusion</u>

Defendants' motion to dismiss [**doc. #15**] is **DENIED** as moot because Nelson has filed

an amended complaint, thereby rendering the original complaint of no legal effect.

Defendants' motion to dismiss all claims in the amended complaint against the named

defendants [**doc. #22**] is **GRANTED**.  The requests for declaratory and injunctive relief are

**DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B).  The Clerk is directed to enter judgment

and close this case.

**SO ORDERED** this 7th day of April 2006, at Bridgeport, Connecticut.


        /s/ Stefan R. Underhill
                Stefan R. Underhill
                United States District Judge